**DEREK SMITH LAW GROUP, PLLC**
CATHERINE W. LOWRY, ESQUIRE
Attorney ID No. 316291
1628 Pine Street
Philadelphia, PA 19103
(267) 857-0832
catherine@dereksmithlaw.com
*Attorneys for Plaintiff Doe*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JANE DOE,<br><br>                    Plaintiffs,<br><br>       v.<br><br>SCHUYLKILL COUNTY; KENT HATTER (in his individual and official capacity); and HEIDI ZULA (in her individual and official capacity),<br><br>                    Defendants. | Civil Action No. 3:24-cv-00386<br><br>**PLAINTIFF DEMANDS A TRIAL BY JURY** |

## AMENDED COMPLAINT

Plaintiff, Jane Doe (hereinafter "Plaintiff Doe"), by and through her attorneys, the Derek Smith Law Group, PLLC, respectfully state, upon information and belief, the following:

## NATURE OF THE CASE

1.   This action arises out of the unlawful discrimination, sexual harassment, and retaliation by Defendants against Plaintiff Doe based on her sex and gender

1

and in retaliation for Plaintiff Doe's continued opposition to the unlawful comments and conduct of the Defendants.

2.      Plaintiff Doe bring this action charging that Defendants violated Plaintiff Doe's rights pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), the Pennsylvania Human Relations Act, as amended, 42 U.S. §§ 951, et seq. ("PHRA"), Pennsylvania Common Law, and Section 1983 of the Civil Rights Act of 1871, 42 U.S.C. § 1983 ("Section 1983").

3.      Plaintiff Doe seeks damages to redress the injuries she has suffered as a result of the Defendants' actions.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §1331, which gives district courts jurisdiction over all civil actions arising under the Constitution, laws, and treaties of the United States.

5.      This Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331 because it involves questions under federal law under Title VII.

6.      This Court has supplemental jurisdiction under 28 U.S.C. §1367.

7.      This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1343, which gives district courts original jurisdiction over (a) any civil action authorized by law to be brought by any person to redress the deprivation,

under color of any State Law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; and (b) any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of the civil rights.

8.  Venue is proper in this district based upon Defendants' residency and because a substantial part of the events or omissions giving rise to the claim occurred within the Schuylkill County, in the Commonwealth of Pennsylvania, within the Middle District of Pennsylvania. 28 U.S.C. §1391(b).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

9.  On February 10, 2022, Plaintiff Doe timely filed Charges of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") and dual filed with the Pennsylvania Human Relations Commission ("PHRC") alleging violations of Title VII, the PHRA, Pennsylvania Common laws, and Section 1983.

10. On December 5, 2023, The United States Department of Justice, Civil Rights Division, issued Plaintiff Doe a letter notifying of her "right to institute a civil action..." *See* Exhibit A.

11.    Plaintiff Doe's PHRA claims are ripe because more than one year has elapsed since PHRC assumed jurisdiction over Plaintiff Doe's Charges.

12.    Plaintiff Doe has timely filed this action and has complied with all administrative prerequisites to bring this lawsuit.

## **PARTIES**

13.    At all times relevant hereto, Plaintiff Doe was an individual female, who was and is a resident of Schuylkill County in the Commonwealth of Pennsylvania.

14.    Plaintiff Doe is referred to using the pseudonym of Plaintiff Doe due to the extreme harms that may come to her should her identity be revealed, including but not limited being stigmatized by her friends, family, community and employer(s); she has taken steps to keep her identity confidential; she would be reluctant to continue to pursue this litigation if she were forced to reveal her identity; and she has no ulterior motives for proceeding anonymously.

15.    Defendant Schuylkill County (hereinafter referred to "Defendant SC") is a municipality of the Commonwealth of Pennsylvania.

16.    Defendant SC owns, operates, manages, directs and controls the Schuylkill County Courthouse, whose agents, servants and employees at all relevant

times were acting within the course and scope of their employment under color of state law and operating pursuant to official policies, customs or practices of Defendant SC.

17. At all relevant times, Defendant SC has continuously, and is currently, doing business in the Commonwealth of Pennsylvania and has at least fifteen (15) employees.

18. At all relevant times, Defendant SC has continuously been an employer engaged in an industry affecting commerce within the meaning of Section 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000 (e), (g), and (h).

19. At all times material hereto, Defendant SC conducted business in Schuylkill County, employing four or more persons within the Commonwealth of Pennsylvania, and falls within the reach of the Pennsylvania Human Relations Act (PHRA), 43 P.S. § 955 (a).

20. At all times material, Defendant Kent Hatter (hereinafter referred to as "Defendant Hatter") in an individual male who was, and remains, the Chief Tax Assessor for Defendant SC.

21. At all times material, Defendant Hatter, had and maintains hiring, supervisory, and firing authority over Plaintiff.

22. At all times material, Defendant Heidi Zula (hereinafter referred to as "Defendant Zula") was the Human Resources Director for Defendant SC.

23.   At all times material, Defendant Zula, had hiring, supervisory, and firing authority over Plaintiff.

24.   At all times material, Defendants were the joint employers of Plaintiff Doe.

25.   At all relevant times, Defendants were agents and/or employees of Defendant SC and were acting within the course and scope of their agency and/or employment with Defendant SC.

## **MATERIAL FACTS**

26.   Around December 1, 2014, Plaintiff Doe was hired by Defendant SC.

27.   Around May 2021, Defendant Hatter began working as the Chief Tax Assessor with Respondent SC.

28.   In May 2021, Plaintiff Doe was an employee of Defendant SC's Tax Assessment office.

29.   Defendant SC's Chief Tax Assessor is the department head of Defendant SC's Tax Assessment office.

30.   In his role as Chief Tax Assessor, Defendant Hatter was Plaintiff Doe's direct supervisor.

31.   In his role as Chief Tax Assessor, Defendant Hatter was responsible for the day-to-day supervision of Plaintiff Doe, directed the daily work of Plaintiff Doe, and had the ability, and did, discipline Plaintiff Doe.

32. On June 6, 2021, Witness Doe 1 requested a meeting with Defendant Hatter for her and Plaintiff Doe.

33. Thereafter, Defendant Hatter met with Plaintiff Doe and Witness Doe 1 in Plaintiff Doe's office located in Defendant SC's 410 Building.

34. During the meeting, Defendant Hatter made unwanted and unwelcome sexually harassing and discriminatory comments to Plaintiff Doe and Witness Doe 1.

35. By way of example, Defendant Hatter stated, "[c]onsider me like a father, giving daddy advice," and "I will protect you, I will keep you safe."

36. By way of further example, Defendant Hatter also stated, to Witness Doe 1, "[h]ey were you a cheerleader."

37. Defendant Hatter, after making the above comment, looked at Plaintiff Doe, eyed her up and down, and stated, "[y]ou were probably a cheerleader too, huh?"

38. By way of further example, Defendant Hatter also referenced a former female co-worker of his and stated, "[s]he was attractive like you [Witness Doe 1] and had Farah Fawcett hair."

39. Upon information and belief, Defendant Hatter did not make comments about the physical appearances of male employees.

40. By way of further example, Defendant Hatter asked Witness Doe 1 "d]o you read books? Or let me guess, you are a glamour magazine reader, right?"

41.    Upon information and belief, Defendant Hatter stated this to Witness Doe 1 because he believed Witness Doe 1 was less intelligent because she is a woman.

42.    Upon information and belief, Defendant Hatter did not question the intelligence of male employees.

43.    Defendant Hatter also brought up the fact that he was aware that Plaintiff Doe was seeing a therapist.

44.    Defendant Hatter went on to tell Plaintiff Doe that she did not need therapy but rather, "need[ed] to get over it and start working more."

45.    Upon information and belief, Defendant Hatter made this statement to Plaintiff Doe because he believes that therapy is a sign of weakness, that women are the weaker gender, and as such, women utilize therapy more than men.

46.    Defendant Hatter, after he made the above statement, told Plaintiff Doe and Witness Doe 1, "I know what the two of you need. You need structure and routine in your lives."

47.    Upon information and belief, Defendant Hatter stated this to Plaintiff Doe and Witness Doe 1 to assert dominance and control over them as they are females, and he is a male.

48.    Defendant Hatter then turned the conversation to how he believed many females do not work but rather make money off the application "Tik Tok."

49.     Thereafter, Witness Doe 1 left the room.

50.     After Witness Doe 1 left the room, Defendant Hatter asked Plaintiff Doe if she ever watched "Tik Tok."

51.     When Plaintiff Doe informed him that she did not, Defendant Hatter stated, "It's pretty good. It's like soft porn."

52.     Defendant Hatter did not make similar statements, to those outlined above, to Plaintiff Doe and Witness Doe 1's male colleagues.

53.     The above unwanted and unwelcome comments caused Plaintiff Doe to feel extremely distressed, embarrassed, humiliated, and degraded.

54.     In addition, these unwanted comments and conduct exacerbated Plaintiff Doe's distress, that was caused by previous sexual harassment and retaliation she was subjected to by other Defendant SC employees.

55.     Upon information and belief, Defendant Hatter was aware of the previous sexual harassment and retaliation Plaintiff Doe was subjected to by other Defendant SC employees.

56.     Upon information and belief, at the time Defendant Hatter made the above comments, he had not yet been required to participate or attend to Defendant SC's sexual harassment training.

57.     Plaintiff Doe and Witness Doe 1 were fearful to report the unwanted and unwelcome conduct from Defendant Hatter as they, and two (2) of their colleagues,

had recently experienced retaliation by Defendant SC for unrelated reports of sexual harassment.

58.   Despite her fear, Witness Doe 1, around June 7, 2021, reported the sexual harassment Defendant Hatter subjected her and Plaintiff Doe to. *See* Exhibit B.

59.   Witness Doe 1's reports were made to Defendant Zula via email. *Id.*

60.   On June 8, 2021, having received no response from Defendant Zula, Witness Doe 1 sent a follow up email and behalf of herself and Plaintiff Doe.  *See* Exhibit C.

61.   Defendant Zula replied to Witness Doe 1 that same day and requested to meet with Witness Doe 1 to discuss her reports related to Defendant Hatter. *Id*.

62.   Also on June 8, 2021, Defendant Zula reached out to Plaintiff Doe to schedule a meeting. *See* Exhibit D.

63.   Defendant Zula did not reach out to Plaintiff Doe until after Witness Doe 1 sent the follow up email mentioned above in paragraph 59. *See* Exhibits C and D.

64.   Plaintiff Doe responded the same day and informed Defendant Zula that she was not available that day, given her work schedule, but that she was available that Thursday, June 10, 2023. *Id*.

65.   On June 10, 2021, Plaintiff Doe email Defendant Zula that she was, "not comfortable with a union steward because of the sensitivity of all that [was] going on." *See* Exhibit E.

66. Plaintiff Doe further requested she be permitted to bring "an unbiased witness of [her] choosing" to the meeting. *Id.*

67. Defendant Zula denied Plaintiff Doe's request for an unbiased witness and informed her that Andrew Kozlosky, an AFSCME representative, may be available to sit in. *Id*

68. Upon information and belief, Plaintiff Doe's similarly situated colleagues were not denied the right to bring an independent witness to a meeting with Human Resources.

69. Plaintiff Doe responded and questioned Defendant Zula's impartiality and position regarding an independent witness. *Id.*

70. At the time, Defendant Zula was a named Respondent in an EEOC Charge that Plaintiff Doe had filed on March 16, 2021 (EEOC Charge No. 530-2021-02451).

71. Specifically, Plaintiff Doe stated, "I am concerned about your impartiality and retaliation that you may engage in as a result of my claims," and "I am requesting I be treated equally or at the very least be provided a legitimate reason that I am not permitted to have a witness of my own choosing." *Id.*

72. Plaintiff Doe questioned Defendant Zula's conduct regarding complaints made by her co-worker, Kathleen Gillespie. *Id.*

73. Specifically, Plaintiff Doe mentioned that when Ms. Gillespie's complained, Defendant Zula had another individual conduct the investigation and Defendant Zula sat in on Ms. Gillespie's interview as an independent witness. *Id.*

74. Defendant Zula replied and reaffirmed that Plaintiff Doe's "request for an independent witness [was] denied." *Id.*

75. Defendant Zula, further threatened Plaintiff Doe that her, "failure to participate in the meeting [would] result in the completion of the investigation without [Plaintiff Doe's] input." *Id.*

76. Witness Doe 1 engaged in similar communication with Defendant Zula, including requesting an independent witness be present, questioning Defendant Zula's disparate treatment, and questioning Defendant Zula's impartiality. *See* Exhibit C.

77. Like Plaintiff Doe, Witness Doe 1's requests for an independent witness were denied. *Id.*

78. Around June 10, 2021, Plaintiff Doe and Witness Doe 1 met with Defendant Zula and gave statements detailing Defendant Hatter's sexually harassing and discriminatory comments.

79. On June 21, 2021, Witness Doe 1 sent Defendant Zula an email which stated, "I haven't received any feedback on your investigation into the discriminatory comments made to me by my supervisor [Defendant] Hatter. I reported this to you on 06/06/2021 and am anxiously waiting on a response." *See* Exhibit F.

80. Defendant Zula had not yet provided any feedback to Plaintiff Doe either.

81. Defendant Zula replied, "The investigation into the complaint that you made regarding your meeting with [Defendant] Hatter is still ongoing. You will be advised when the investigation is completed." *Id.*

82. In the same email, Defendant Zula denied the reasonable accommodation request, to work from home, that Witness Doe 1 made. *Id.*

83. Plaintiff Doe had also made a reasonable accommodation request to work from home, which Defendant Zula similarly denied.

84. Upon information and belief, Defendant SC's policies state that an employees' reasonable accommodation requests are to be approved or denied by the employees' direct supervisor.

85. As such, Plaintiff Doe and Witness Doe 1 both submitted, to Respondent Hatter, a reasonable accommodation request; to be permitted to work from home.

86. Defendant Hatter denied Plaintiff Doe and Witness Doe 1's reasonable accommodation request and forced them to come into work.

87. This denial was after Plaintiff Doe and Witness Doe 1 reported Respondent Hatter's sex discrimination and sexual harassment.

88. Plaintiff Doe and Witness Doe 1's similarly situated colleagues who had not reported discrimination were permitted to work from hom

89. Upon information and belief, Defendant Hatter denied Plaintiff Doe and Witness Doe 1's request to work from home because he knew forcing them to come into work would cause them severe distress and fear for their safety.

90. Thereafter, around June 21, 2021, Defendant Hatter emailed Witness Doe 1 regarding her clock in time within the office and stated, "I am told [Defendant SC's Courthouse] is monitored and we need to make sure your hours worked are the same as when you are in the building." *See* Exhibit G.

91. Defendant Hatter, similarly, "warned" Plaintiff Doe that County Administrator Gary Bender was watching her hours and Plaintiff Doe's hours should correspond with her hours worked in Defendant SC's Courthouse.

92. Given that Plaintiff Doe and Witness Doe 1's work often required them to work from a location other than Defendant SC's Courthouse, this was irrational and implausible.

93. Furthermore, Plaintiff Doe and Witness Doe 1 were both fearful learning that Defendant SC employees always knew their exact whereabouts.

94. Upon information and belief, Defendant Hatter's monitoring of Plaintiff Doe and Witness Doe 1, as they entered and exited Defendant SC buildings, was in retaliation for their reports of Defendant Hatter's sexual harassment and gender discrimination.

95.   Due to the previous conduct of Defendant Hatter, Defendant Zula, and Defendant SC, this caused Plaintiff Doe and Witness Doe 1 to feel extremely distressed and fearful.

96.   Upon information and belief, Defendant Hatter was completely aware of the fact that Plaintiff Doe and Witness Doe 1's reasonable accommodation requests to work from home were due to the hostile working environment of Defendant SC.

97.   Despite this, Defendant Hatter ignored both Plaintiff Doe and Witness Doe 1's repeated requests for a reasonable accommodation as further retaliation for their reports of his unlawful behavior.

98.   Upon information and belief, there were other employees at Defendant SC who were able to work from home for various reasons and not required to use accrued time or be unpaid.

99.   Upon information and belief, Plaintiff Doe and Witness Doe 1's requests were denied as retaliation for their reports of Defendant Hatter's sexual harassment and gender discrimination.

100.   Upon information and belief, Defendants took no steps to ensure that Plaintiff Doe and Witness Doe 1's office spaces were a safe working environment.

101.   Around July 20, 2021, Plaintiff Doe and Witness Doe 1 each, independently, met with Defendant Hatter and Defendant Zula.

102. During Plaintiff Doe's meeting, Plaintiff Doe was reprimanded and received a written warning. *See* Exhibit H.

103. Additionally, during the meeting Defendant Hatter condescendingly stated to Plaintiff Doe, "what do you want me to do, bring your dead boyfriend back?"

104. Defendant Hatter was aware that Plaintiff Doe had recently, and unexpectedly, lost her boyfriend to suicide.

105. Upon information and belief, Defendant Hatter's statements were made because he believed that Plaintiff Doe, as a woman, was being too emotional about the loss of her boyfriend.

106. During Witness Doe 1's meeting, Defendant Hatter became visibly enraged and even slammed his fists on the table.

107. Upon information and belief, Defendant Hatter did not engage in aggressive behavior with Plaintiff Doe's male colleagues.

108. Upon information and belief, Defendant Zula and Defendant Hatter intended to issue Witness Doe 1 a written warning during that meeting.

109. However, as a result of Defendant Hatter's outburst, they delayed the write-up.

110. Witness Doe 1 was written up on September 13, 2021. *See* Exhibit I.

111. Around August 20, 2021, Plaintiff Doe reported that Defendant Hatter told her she "was doing a good job, even Stevie Wonder could see how much she improved." See Exhibit J.

112. Upon information and belief, Defendant Hatter did make such sarcastic and demeaning statements to Plaintiff Doe's male coworkers. *Id.*

113. Around that same time, August 20, 2021, Plaintiff Doe reported that she had attempted to reach her Deputy Chief Assessor, Chrissy Zimmerman (hereinafter "Ms. Zimmerman"), to coordinating meeting outside Defendant SC's Courthouse so that Ms. Zimmerman could escort her, Plaintiff Doe, into the building to obtain work. *Id.*

114. This is the process which Defendant Hatter, Ms. Zimmerman, and Plaintiff Doe had all agreed upon. *Id.*

115. Ms. Zimmerman was unresponsive to Plaintiff Doe's communication attempts. *Id.*

116. Later that same day, Defendant Hatter informed Plaintiff Doe that he had instructed Ms. Zimmerman not to respond to Plaintiff Doe as she, Plaintiff Doe, "should be a problem solver and figure it out on her own." *Id.*

117. Defendant Hatter's instructions to Ms. Zimmerman impeded Plaintiff Doe's ability to perform her job duties and responsibilities.

118. Upon information and belief, Defendant Hatter did not instruct Ms. Zimmerman to ignore communications of Plaintiff Doe's male colleagues.

119. To date, Plaintiff Doe and Witness Doe 1 have received no update regarding the investigation.

120. Plaintiff Doe and Witness Doe 1 were not permitted to work from home until December 21, 2021, and then it was only due to an agreement between theirs and Defendant SC's counsel.

121. Of note, Plaintiff Doe and Witness Doe 1 were able and permitted to work from home as a result of the COVID-19 pandemic and thus, there is no legitimate business reason for the denial of their request.

122. Around February 15, 2022, Plaintiff Doe was notified that she was scheduled for Loudermill Hearing on February 17, 2022. *See* Exhibit K.

123. Between August 2021, and February 2022, Defendants engaged in antagonistic behavior towards Plaintiff Doe.

124. During this time, Plaintiff Doe continuously and repeatedly opposed and/or reported Defendants unlawful discriminatory and retaliatory conduct.

125. Around March 8, 2022, Plaintiff Doe received a letter from Defendant Zula which stated," we have no alternative but to determine that you have abandoned your Field Appraiser position and no longer wish to be employed by the County." *See* Exhibit L.

126. Around March 14, 2022, Plantiff Doe was issued a five (5) day unpaid suspension. *See* Exhibit M.

127. The suspension was issued after a Loudermill Hearing was held for Plaintiff Doe's alleged unapproved absences.

128. During the Loudermill Hearing, and thereafter, Plaintiff Doe and her Union Representative, Pamela Rigby, requested Defendants provide Plaintiff with a Defendant SC laptop so that Plaintiff Doe could adequately perform her job duties and responsibilities from home and on the road.

129. Defendants denied Plaintiff Doe's request for a laptop.

130. Around August 24, 2022, Plaintiff Doe received an email from then HR Director, Andrea Whelan (hereinafter "Ms. Whelan"), with an August 23, 2022, letter attached. *See* Exhibit N.

131. The letter stated, "[t]his letter is to advise you that you have been absent from work without leave or approval since Wednesday, April 27, 2022," and "[Defendant SC] has no alternative but to determine that you have abandoned your Field Appraiser position and have voluntarily resigned your position with [Defendant SC], effective the date of this letter, August 23, 2022." *Id.*

132. On August 25, 2022, Plaintiff Doe emailed Ms. Whelan, and informed her that she did not voluntarily resign her position with [Defendant SC] and "any separation from employment has been both forced and calculated by [Defendant SC] as further proof of ongoing retaliation that myself and the other[s] have been subjected to since [Defendant SC] became aware of our intent to file a lawsuit in May 2020." *See* Exhibit O.

133.   Plaintiff Doe's email response further informed Ms. Whelan that around April
27, 2022, she had been instructed not to enter any further work into Defendant SC's
Govern system due to notices being sent out and/or balancing being completed. *Id*.

134.   Plaintiff Doe further stated, "I was never informed that balancing was completed
nor was I given the ok to resume work" and "I did not have any additional work to
complete." *Id*.

135.   Additionally, Plaintiff Doe informed Ms. Whelan that in May 2022, "a list that
reflected each of the 67 [Defendant SC] municipalities, along with the field
appraiser assigned to each area, was distributed to employees of the assessment
office. I was omitted from the list which is evidentiary of [Defendant SC's] intent to
server my employment as early as May 2022." *Id*.

136.   Finally, Plaintiff Doe's email informed Ms. Whelan that around August 4, 2022,
Defendant Hatter requested approval to lease vehicles for the use of Defendant SC's
Field Appraisers and that the request did not include a request for a vehicle for her
use. *Id*.

137.   Upon information and belief, Defendant Hatter did not request approval for a
Defendant SC vehicle for Plaintiff Doe's use because he intended to terminated
Plaintiff Doe.

138.   Despite her opposition to her alleged resignation, Plaintiff Doe's resignation was
listed on the September 6, 2022, Commissioners' Meeting Agenda. *See* Exhibit P.

139.  Upon learning of this, Plaintiff Doe emailed Defendant SC's Commissioner, Gary Hess, and informed him that she was not resigning her position. *Id.*

140.  Around September 7, 2022, during the Commissioners' Meeting, Plaintiff Doe's resignation was discussed but was not voted on. *Id.*

141.  Also, around September 7, 2022, Plaintiff Doe emailed Defendant Hatter and Ms. Whelan and informed them that she was not voluntarily resigning her position with Defendant SC. *See* Exhibit Q.

142.  Plantiff Doe had to send the above-mentioned email from her personal email as her Defendant SC issued email had been cut off.

143.  Around September 8, 2022, Defendant Hatter informed Plaintiff Doe that she would need to file a grievance with her Union. *Id.*

144.  Notably, Defendant Hatter, Plaintiff Doe's supervisor, failed to provide Plaintiff Doe with the grievance form and/or engage in an informal conversation in an attempt to resolve the issue as required by Defendant SC's "Grievance Procedure (Policy #2005-09)." *See* Exhibit R.

145.   As such, around September 19, 2022, Plaintiff Doe located Defendant SC's Grievance Procedure (Policy #2005-09) on Defendant SC's public website, as she no longer had access to her Defendant SC issued email or Defendant SC's intranet.

146.  Plaintiff Doe submitted a copy of the Grievance Form, with her necessary portions completed, to Defendant Hatter. *See* Exhibit Q.

147. Plaintiff Doe requested, pursuant to the Grievance Form, that Defendant Hatter, her Department Head, complete the form and submit it to HR. *Id.*

148. At no time since August 24, 2022, has Plaintiff Doe been offered a Loudermill Hearing, nor has she been reinstated to her position or received any communication from Defendant SC regarding her employment.

149. Plaintiff Doe repeatedly opposed the retaliatory behavior or Defendants.

150. Plaintiff Doe claims that Defendants unlawfully discriminated and retaliated against her because of her sex/gender and because she complained and opposed the unlawful conduct of Defendants related to her sex/gender.

151. As a result of Defendants' actions, Plaintiff Doe felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

152. As a result of the acts and conduct complained of herein, Plaintiff Doe has suffered and will continue to suffer the loss of income the loss of salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff Doe also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

153. Plaintiff Doe has further experienced severe emotional and physical distress.

154.     Plaintiff Doe further claims aggravation, activation, and/or exacerbation of any preexisting condition(s).

155.     Upon information and belief, the discrimination and retaliation will continue after the date of this complaint and Plaintiff Doe hereby make a claim for all continuing future harassment and retaliation.

156.     As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff Doe demands Punitive Damages as against all the Defendants jointly and severally.

157.     The above are just some examples of the discrimination to which Defendants subjected Plaintiff Doe to on a continuous and on-going basis throughout Plaintiff's Doe employment.

158.     Defendants have exhibited a pattern and practice of not only harassment and discrimination, but also hostile work environment and retaliation.

159.     Defendant SC's vicarious liability is extended to the intentional acts of Defendant Hatter and Defenant Zula because the conduct was within the scope of their employment or alternatively because Defendant SC ratified Defendant Hatter and Defendant Zula's conduct by formal action or by passive acquiescence.

160.    Plaintiff Doe claims a continuous practice of discrimination and claims a continuing violation and makes all claims herein under the continuing violations doctrine.

161.    Plaintiff Doe further claims constructive and/or actual discharge to the extent that Plaintiff was essentially terminated from her position as a result of the unlawful discrimination and retaliation.

162.    Plaintiff Doe claims alternatively that Plaintiff Doe was an Independent Contractor, and Plaintiff Doe makes all applicable claims for the above conduct and facts under the applicable law pertaining to Independent Contractors. Furthermore, in such case, Plaintiff Doe claims that Defendants owed and breached its duty to Plaintiff Doe to prevent the harassment/discrimination and is liable therefore for negligence.

**COUNT I**
**DISCRIMINATION**
**TITLE VII**
**(By Plaintiff Doe against Defendant SC)**

163.    Plaintiff Doe repeats and realleges each and every allegation made in the above paragraphs of this complaint.

164.    This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq.,

as amended, for relief based upon the unlawful employment practices of the above-named Defendants.

165.    Plaintiff Doe complains of Defendants' violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's sex/gender.

166.    SEC. 2000e-2. [Section 703] states as follows:

  (a) Employer practices

  It shall be an unlawful employment practice for an employer –

  (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

  (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

167.    Defendant SC engaged in unlawful employment practices prohibited by Title VII by intentionally discriminating against Plaintiff Doe with respect to

her compensation, terms, conditions, training, and privileges of employment because of her sex/gender.

168.    Defendants subjected Plaintiff Doe to adverse tangible employment actions—defined as significant changes in Plaintiff Doe's employment status, discipline, denial of training, failure to promote, reassignment with significantly different job responsibilities, and decisions causing changes in significant changes in their employment benefits.

169.    Plaintiff Doe's protected characteristic (sex/gender) played a determinative factor in Defendant SC's decisions.

170.    Defendant SC cannot show any legitimate nondiscriminatory reasons for its employment practices and any reasons proffered by Defendant SC for its actions against Plaintiff Doe are pretextual and can readily be disbelieved.

171.    Alternatively, Plaintiff Doe's protected status played a motivating part in the Defendant SC's decisions even if other factors may also have motivated its actions against Plaintiff Doe.

172.    Defendant SC acted with the intent to discriminate.

173.    Defendant SC acted upon a continuing course of conduct.

174.    As a result of the Defendant SC's violations of Title VII, Plaintiff Doe has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life,

humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

## COUNT II
## RETALIATION
## TITLE VII
### (By Plaintiff Doe against Defendant SC)

175.    Plaintiff Doe repeats and realleges each and every allegation made in the above paragraphs of this complaint.

176.    Title VII protects employees from retaliation for attempting to exercise their rights under the Act:

42 U.S.C. § 2000e-3. Other unlawful employment practices

(a) Discrimination for making charges, testifying, assisting, or participating in enforcement proceedings. It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [she] has opposed any practice made an unlawful employment practice by this subchapter, or because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

177.     The Supreme Court in *Burlington v. N. & S.F. Ry. V. White*, 548 U.S. 53, 68 (2006) held that a cause of action for retaliation under Title VII lies whenever the employer responds to protected activity in such a way that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination."

178.     Informal complaints and protests can constitute protected activity under the "opposition" clause of 42 U.S.C. § 2000e-3(a). *Moore v. City of Philadelphia*, 461 F.3d 331, 343 (3d Cir. 2006) ("Opposition to discrimination can take the form of informal protests of discriminatory employment practices, including making complaints to management").

179.     Title VII's anti-retaliation provision also protects employees who speak out about discrimination by answering questions during an employer's internal investigation. *Crawford v. Metropolitan Gov't of Nashville and Davidson Cty., Tennessee*, 555 U.S. 271, 277 (2009) (declaring that there is "no reason to doubt that a person can 'oppose' by responding to someone else's question just as surely as by provoking the discussion, and nothing in the statute requires a freakish rule protecting an employee who reports discrimination on her own initiative but not one who reports the same discrimination in the same words when her boss asks a question.")

180.     "[A] plaintiff need not prove the merits of the underlying discrimination

complaint, but only that '[s]he was acting under a good faith, reasonable belief

that a violation existed.'" *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074,

1085 (3d Cir. 1996); *Griffiths v. CIGNA Corp.*, 988 F.2d 457, 468 (3d Cir.

1993); and *Sumner v. United States Postal Service*, 899 F.2d 203, 209 (2d Cir.

1990), overruled on other grounds by *Miller v. CIGNA Corp.,* 47 F.3d 586 (3d

Cir.1995).

181.     "Title VII's whistleblower protection is not limited to those who blow

the whistle on their own mistreatment..." *See Moore v City of Phila*, 461 F.3d

at 331 (3d Cir. 2006)

182.     Title VII not only bars retaliation against the employee who engaged in

the protected activity; it also bars retaliation against another employee if the

circumstances are such that the retaliation against that employee might well

dissuade a reasonable worker from engaging in protected activity. *See*

*Thompson v. North American Stainless*, *LP*, 131 S. Ct. 863, 868 (2011).

183.     Here, Defendant SC discriminated against Plaintiff Doe because of

her protected activity under Title VII.

184.     Plaintiff Doe acted under a reasonable, good faith belief that her, or

someone else's, right to be free from discrimination on the basis of

sex/gender was violated.

185.    Plaintiff Doe was subjected to materially adverse actions at the time or after the protected conduct took place.

186.    There was a causal connection between Defendant SC's materially adverse actions and Plaintiff Doe's protected activity.

187.    Defendant SC's actions were "materially adverse" because they were serious enough to discourage a reasonable worker from engaging in protected activity.

188.    Defendant SC acted upon a continuing course of conduct.

189.    Plaintiff Doe will rely on a broad array of evidence to demonstrate a causal link between their protected activity and the Defendant SC's actions taken against her, such as the unusually suggestive proximity in time between events, as well as Defendant SC's antagonism and change in demeanor toward Plaintiff Doe after Defendant SC became aware of Plaintiff Doe's protected activity.

190.    As a result of Defendant SC's violations of Title VII, Plaintiff Doe has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

## COUNT III
## HOSTILE WORK ENVIRONMENT
### Title VII
### (By Plaintiff Doe against Defendant SC)

191.    Plaintiff Doe repeats and realleges each and every allegation made in

the above paragraphs of this complaint.

192.    Title VII also prohibits hostile work environment harassment, defined

as unwanted comments or conduct regarding the plaintiff's protected

characteristics that have the purpose or effect of unreasonably interfering with

the terms and conditions of the plaintiff's employment. *Harris v. Forklift*

*Systems*, 510 U.S. 17, 21 (1993).

193.    An employer is strictly liable for supervisor harassment that

"culminates in a tangible employment action, such as discharge, demotion,

or undesirable reassignment." *Burlington Industries, Inc. v. Ellerth*, 524 U.S.

742 (1998).

194.    Respondeat superior liability for the acts of non-supervisory

employees exists where "the defendant knew or should have known of the

harassment and failed to take prompt remedial action." *Andrews v. city of*

*Philadelphia*, 895 F.2d 1469, 1486 (3d Cir. 1990).

195.    Employer liability for co-worker harassment also exists where "the

employer failed to provide a reasonable avenue for complaint." *Huston v.*

*Procter & Gamble Paper Prods. Corp.*, 568 F.3d 100, 105 (3d Cir. 2009).

196.     The Third Circuit has held that the retaliation provision of Title VII "can be offended by harassment that is severe or pervasive enough to create a hostile work environment." *Jensen v. Potter*, 435 F.3d 444, 446 (3d Cir. 2006).

197.     Here, Defendant SC's conduct occurred because of Plaintiff Doe's legally protected characteristics (sex/gender) and was severe or pervasive enough to make a reasonable person of the same legally protected classes believe that the conditions of employment were altered, and that the working environment was intimidating, hostile, or abusive.

198.     The discriminatory conduct directly refers to Plaintiff Doe's sex/gender.

199.     Plaintiff Doe's supervisors, Defendant Hatter and Defendant Zula had the authority to control Plaintiff Doe's work environment, and they abused that authority to create a hostile work environment.

200.     Derogatory and sexually explicit harassing conduct and comments filled the environment of Plaintiff Doe's work area.

201.     The derogatory and sexually explicit harassing comments and conduct caused Plaintiff Doe to sustain severe emotional distress resulting in physical illness.

202.     Plaintiff Doe subjectively regarded the derogatory and sexually explicit harassing comments and conduct as unwelcome, unwanted and she objectively opposed the conduct.

203.     The conduct was both severe and pervasive.

204.     The conduct was emotionally damaging and humiliating.

205.     The conduct unreasonably interfered with Plaintiff Doe's work performance.

206.     The conduct was so extreme that it resulted in material changes to the terms and conditions of Plaintiff Doe's employment.

207.     The Defendants provided a futile avenue for a complaint.

208.     The Defendants retaliated against Plaintiff Doe for her complaints.

209.     The Defendants acted upon a continuing course of conduct.

210.     As a result of the Defendant SC's violations of Title VII, Plaintiff Doe has suffered damages including but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**COUNT IV**
**DISCRIMINATION**
**PHRA § 955**
**(By Plaintiff Doe against Defendant SC)**

211.     Plaintiff Doe repeats and realleges each and every allegation made in

the above paragraphs of this complaint.

212.     The PHRA § 955 provides that it shall be an unlawful discriminatory

practice:

"(a) For any employer because of the race, color, religious creed, ancestry,

age, sex, national origin or non-job related handicap or disability or the use

of a guide or support animal because of the blindness, deafness or physical

handicap of any individual or independent contractor, to refuse to hire or

employ or contract with, or to bar or to discharge from employment such

individual or independent contractor, or to otherwise discriminate against

such individual or independent contractor with respect to compensation,

hire, tenure, terms, conditions or privileges of employment or contract, if the

individual or independent contractor is the best able and most competent to

perform the services required."

213.     Defendants engaged in an unlawful discriminatory practice by

discriminating against Plaintiff Doe because of her sex/gender.

214.     As a result of the Defendant SC's violations of the PHRA, Plaintiff

Doe has suffered damages including but not limited to: past and future lost

wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment

of life, humiliation, emotional distress, reputational harm, diminishment of

career opportunities, and other harm, both tangible and intangible.

## COUNT V
## RETALIATION
## PHRA § 955(d)
### (By all Plaintiff Doe against all Defendants)

215.    Plaintiff Doe repeats and realleges each and every allegation made in

the above paragraphs of this complaint.

216.    PHRA § 955(d) provides that it shall be an unlawful discriminatory

practice: "For any person, employer, employment agency or labor

organization to discriminate in any manner against any individual because

such individual has opposed any practice forbidden by this act, or because

such individual has made a charge, testified or assisted, in any manner, in

any investigation, proceeding or hearing under this act."

217.    Defendants engaged in an unlawful discriminatory practice by

discharging, retaliating, and otherwise discriminating against Plaintiff Doe

because of Plaintiff Doe's opposition to the unlawful and discriminatory

employment practices of Defendants.

218.    As a result of the Defendant SC's violations of the PHRA, Plaintiff

Doe has suffered damages including but not limited to: past and future lost

wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

## COUNT VI
## AIDING AND ABETTING
## PHRA § 955(e)
### (Plaintiff Doe against Defendants Hatter & Zula)

219. Plaintiff Doe repeats and realleges each and every allegation made in the above paragraphs of this complaint.

220. PHRA § 955(e) provides that it shall be an unlawful discriminatory practice: "For any person, employer, employment agency, labor organization or employee, to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice, or to obstruct or prevent any person from complying with the provisions of this act or any order issued thereunder, or to attempt, directly or indirectly, to commit any act declared by this section to be an unlawful discriminatory practice."

221. Defendants engaged in an unlawful discriminatory practice in violation of PHRA § 955(e) by aiding, abetting, inciting, compelling and coercing the discriminatory conduct.

**COUNT VII**
**DISPARATE TREATMENT**
**VIOLATION OF EQUAL PROTECTION CLAUSE**
**42 U.S.C. § 1983**
**(Plaintiff Doe against All Defendants)**

222.    Plaintiff Doe repeats and realleges each and every allegation made in

the above paragraphs of this complaint.

223.    The Fourteenth Amendment to the United States Constitution protects

persons from being subjected to discrimination, by persons acting under

color of state law, on the basis of a protected class (e.g., sex, race, or color).

U.S. Const. amend. XIV.

224.    Section 1983 provides:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory or
> the District of Columbia, subjects, or causes to be
> subjected, any citizen of the United States or other person
> within the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured
> in an action at law, suit in equity, or other proper
> proceeding for redress, except that in any action brought
> against a judicial officer for an act or omission taken in
> such officer's judicial capacity, injunctive relief shall not
> be granted unless a declaratory decree was violated or
> declaratory relief was unavailable. For the purposes of this
> section, any Act of Congress applicable exclusively to the
> District of Columbia shall be considered to be a statute of
> the District of Columbia.

42 U.S.C. § 1983.

225.     Section 1983 provides a cause of action for unconstitutional

employment discrimination by both employers and individuals, so long as

the plaintiff shows that the defendant acted under color of state law. *See*

*Fitzgerald v. Barnstable School Committee*, 129 S. Ct. 788, 796 (2009)

("The Equal Protection Clause reaches only state actors, but § 1983 equal

protection claims may be brought against individuals as well as

municipalities and certain other state entities."); *see also Andrews v. City of*

*Philadelphia*, 895 F.2d 1469, 1478 (3d Cir. 1990) ("Liciardello and Doyle

objectively should have known the applicable legal standard, and thus are

not protected by qualified immunity in treating, or allowing their

subordinates to treat, female employees differently on the basis of gender in

their work environment.").

226.     "[M]unicipalities and other local government units [are] included

among those persons to whom § 1983 applies." *Monell v. Department of*

*Social Services of City of New York*, 436 U.S. 658, 690 (1978). However, "a

municipality cannot be held liable under § 1983 on a respondeat superior

theory." Id. at 691. "Instead, it is when execution of a government's policy

or custom, whether made by its lawmakers or by those whose edicts or acts

may fairly be said to represent official policy, inflicts the injury that the

government as an entity is responsible under § 1983." Id. at 694.

227.    Defendants violated Section 1983 by intentionally discriminating against Plaintiff Doe in a serious tangible way with respect to her compensation, terms, conditions or privileges of employment.

228.    Plaintiff Doe's protected characteristics (sex/gender and protected activity) were a determinative or motivating factor in Defendants' employment actions.

229.    Defendants cannot show any legitimate nondiscriminatory reason for their employment practices and any reasons proffered by the Defendants for their actions against Plaintiff Doe are pretextual and can readily be disbelieved.

230.    Plaintiff Doe's protected status played a motivating part in the Defendants' decisions even if other factors may also have motivated Defendants' actions against Plaintiff Doe.

231.    Defendants acted under color of state law.

232.    Defendants acted with the intent to discriminate.

233.    Defendants acted upon a continuing course of conduct.

234.    Moreover, this case unquestionably involves official policy: Defendant SC, and its policymaking officials, the individual Defendants, (1) directed that the violations occur; (2) authorized the violations; (3) agreed to subordinates' decisions to engage in the violations; (4) provided inadequate

training; (5) provided inadequate supervision; and (6) failed to adopt needed policies to prevent the violations.

235.    Defendants acted with malice or reckless indifference to Plaintiff Doe's federally protected rights and as a result there should be an award of punitive damages against Defendants.

236.    As a result of Defendants' violations of Plaintiff Doe's Equal Protection rights, Plaintiff Doe has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**COUNT VIII**
**HOSTILE WORK ENVIRONMENT**
**VIOLATION OF EQUAL PROTECTION CLAUSE**
**42 U.S.C. § 1983**
**(Plaintiff Doe against All Defendants)**

237.    Plaintiff Doe repeats and realleges each and every allegation made in the above paragraphs of this complaint.

238.    The Third Circuit has made it clear that sexual harassment can give rise to an equal protection claim. *See, e.g., Andrews v. City of Philadelphia*, 895 F.2d 1469, 1478-79 (3d Cir. 1990) (upholding verdict for plaintiff on

sexual harassment claims against city employees, based on conclusion that

evidence supported finding of purposeful discrimination); *see also Bohen v.*

*City of East Chicago, Ind.,* 799 F.2d 1180, 1185 (7th Cir. 1986) ("Sexual

harassment of female employees by a state employer constitutes sex

discrimination for purposes of the equal protection clause of the fourteenth

amendment."); Cheryl L. Anderson, *"Nothing Personal:" Individual*

*Liability under 42 U.S.C. § 1983 for Sexual Harassment as an Equal*

*Protection Claim*, 19 BERKELEY J. EMP. & LAB. L. 60, 80 (1998) (citing

*Meritor Savings Bank v. Vinson*, 477 U.S. 57 (1986) as support for argument

that sex harassment can satisfy the intentional discrimination requirement for

equal protection claims).

239.     The Third Circuit has also made clear that a sexual harassment equal

protection claim can be made even if the defendant is not the plaintiff's

supervisor. *See Bonenberger v. Plymouth Twp.,* 132 F.3d 20, 24 (3d Cir.

1997).

240.     Additionally, a plaintiff can show an equal protection violation by a

supervisor who fails properly to address harassment by the plaintiff's co-

workers. *Andrews*, 895 F.2d at 1479.

241.     A municipal employer can be liable on the theory that it directly

encouraged harassment of the plaintiff, or on the theory that it did not do

enough to prevent the harassment. *See Bohen*, 799 F.2d at 1187 ("[A]

plaintiff can make an ultimate showing of sex discrimination either by

showing that sexual harassment that is attributable to the employer under §

1983 amounted to intentional sex discrimination or by showing that the

conscious failure of the employer to protect the plaintiff from the abusive

conditions created by fellow employees amounted to intentional

discrimination."); *cf. Reynolds v. Borough of Avalon,* 799 F. Supp. 442, 447

(D.N.J. 1992) (holding that "a reasonable jury might find that the risk of

sexual harassment in the workplace is so obvious that an employer's failure

to take action to prevent or stop it from occurring--even in the absence of

actual knowledge of its occurrence--constitutes deliberate indifference,

where the employer has also failed to take any steps to encourage the

reporting of such incidents").

242.     Defendants violated Section 1983 by subjecting Plaintiff Doe to

sexual harassment.

243.     Defendants' conduct was not welcomed by Plaintiff Doe.

244.     Defendants' conduct was so severe or pervasive that a reasonable

person in Plaintiff Doe's position would find the work environment to be

hostile or abusive.

245.    Plaintiff Doe believed her work environment was hostile or abusive as

a result of Defendants' conduct.

246.    As a result of the hostile work environment, Plaintiff Doe suffered a

"tangible employment action" defined as a significant change in

employment status, failure to promote, reassignment with significantly

different responsibilities, and/or a decision causing a significant change in

benefits.

247.    Defendants failed to exercise reasonable care to prevent sexual

harassment in the workplace by failing to establish an explicit policy against

harassment in the workplace on the basis of sex, failing to fully

communicate the policy to their employees, failing to provide a reasonable

way for Plaintiff Doe to make a claim of harassment to higher management,

and failing to take reasonable steps to promptly correct the harassing

behavior raised by Plaintiff Doe and Witness Doe 1.

248.    Defendants acted under color of state law.

249.    Defendants acted with the intent to discriminate.

250.    Defendants acted upon a continuing course of conduct.

251.    Moreover, this case unquestionably involves official policy:

Defendant SC, and its policymaking officials, the individual Defendants, (1)

directed that the violations occur; (2) authorized the violations; (3) agreed to

subordinates' decisions to engage in the violations; (4) provided inadequate training; (5) provided inadequate supervision; and (6) failed to adopt needed policies to prevent the violations.

252.     Defendants acted with malice or reckless indifference to Plaintiff Doe's federally protected rights and as a result there should be an award of punitive damages against Defendants.

253.     As a result of Defendant's violations of Plaintiff Doe's Equal Protection rights, Plaintiff Doe has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

## COUNT IX
### RETALIATION
### VIOLATION OF PETITION CLAUSE
### 42 U.S.C. § 1983
### (Plaintiff Doe against All Defendants)

254.     Plaintiff Doe repeats and realleges each and every allegation made in the above paragraphs of this complaint.

255.     The First Amendment gives persons the right to petition the Government for a redress of grievances. U.S. Const. amend. I.

256.     "[R]etaliation by a government employer for a public employee's exercise of the right of access to the courts may implicate the protections of the Petition Clause." *Borough of Duryea v. Guarnieri,* 131 S. Ct. 2488, 2494 (2011); *see also Mack v. Warden Loretto FCI*, 839 F.3d 286 (3d Cir. 2016) (holding that an inmate's oral grievance is protected under the Petition Clause).

257.     To be protected under the First Amendment, speech by a government employee "must be on a matter of public concern, and the employee's interest in expressing herself on this matter must not be outweighed by any injury the speech could cause to 'the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'" *Waters v. Churchill,* 511 U.S. 661, 668 (1994).

258.     A report of sexual harassment by a government official can constitute speech on a matter of public concern. *See Azzaro v. County of Allegheny*, 110 F.3d 968, 975 (3d Cir. 1997) (reasoning that the plaintiff's reports "brought to light actual wrongdoing on the part of one exercising public authority.").

259.     The plaintiff must show a "causal link" between the protected speech and the adverse employment action. *See Azzaro*, 110 F.3d at 981 (reversing summary judgment dismissing First Amendment retaliation claim because

45

there existed "a material dispute of fact as to whether [plaintiff's] reports were a motivating factor in the discharge decision").

260.    If the plaintiff shows that the decisionmaker was aware of the protected conduct, then the plaintiff may use the temporal proximity between that knowledge and the adverse employment action to argue causation. *Thomas v. Town of Hammonton*, 351 F.3d 108, 114 (3d Cir. 2003).

261.    Here, Plaintiff Doe engaged in activity that was protected by the First Amendment's Petition Clause.

262.    Plaintiff Doe's speech was on a matter of public concern.

263.    Defendants took materially adverse employment actions against Plaintiff Doe for engaging in protected activity.

264.    Plaintiff Doe's protected activity was a substantial or motivating factor in Defendants' decisions.

265.    Defendants cannot show any legitimate nondiscriminatory reason for their employment practices and any reasons proffered by Defendants for their actions against Plaintiff Doe are pretextual and can readily be disbelieved.

266.    Defendants acted upon a continuing course of conduct.

267.    Moreover, this case unquestionably involves official policy: Defendant SC, and its policymaking officials (1) directed that the violations occur; (2) authorized the violations; (3) agreed to subordinates' decisions to engage in the violations; (4) provided inadequate training; (5) provided inadequate supervision; and (6) failed to adopt needed policies to prevent the violations.

268.    Defendants acted with malice or reckless indifference to Plaintiff Doe's federally protected rights and as a result there should be an award of punitive damages against Defendants.

269.    As a result of Defendants' violations of Plaintiff Doe's Free Speech rights, Plaintiff Doe has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

## **JURY DEMAND**

Plaintiff Doe request a jury trial on all issues to be tried.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Doe demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, including but not limited to all emotional distress, back pay, and front pay, punitive damages, liquidated damages, statutory damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Respectfully Submitted,
**DEREK SMITH LAW GROUP, PLLC**
*Attorneys for Plaintiff Doe*


By*: /s/ Catherine W. Lowry (Smith), Esq.*
Catherine W. Lowry (Smith), Esq.
1628 Pine Street
Philadelphia, Pennsylvania 19103
Dated:        May 30, 2024                (267) 857-0832