IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JANE DOE, | : Civ. No. 3:24-CV-386 |
| Plaintiff, | : |
| | : (Judge Mariani) |
| v. | : |
| | : (Chief Magistrate Judge Bloom) |
| SCHUYLKILL COUNTY, et al, | : |
| Defendants. | : |

REPORT AND RECOMMENDATION

I. Introduction

This case comes before us on a motion to dismiss filed by the defendants, Schuylkill County, Kent Hatter, and Heidi Zula (collectively, "the defendants"). (Doc. 12). The plaintiff, who is proceeding anonymously under the pseudonym Jane Doe, filed suit asserting claims of discrimination, retaliation, hostile work environment, aiding and abetting, and disparate treatment, alleging that she was sexually harassed by her supervisor, Hatter, and was retaliated against after she reported the harassment. (Doc. 11). She asserts these claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Pennsylvania Human Relations Act ("PHRA"), and the Equal Protection Clause of the Fourteenth Amendment. (*Id.*).

1

The defendants have filed a motion to dismiss (Doc. 12), arguing that this action runs afoul of the claim splitting doctrine, as Jane Doe is a plaintiff in another action against the County that is pending before this court. The defendants alternatively argue that several of Plaintiff Doe's claims—Title VII discrimination against the County (Count I), PHRA discrimination against the County (Count IV), and discrimination and retaliation under the Equal Protection clause against all defendants (Counts VII, VIII)—should be dismissed for failure to state a claim. (*Id.*).

For the following reasons, we will recommend that this action be stayed pending the resolution of the allegedly duplicative action.

## II. Background

This case arises from allegedly discriminatory statements made by Hatter, Plaintiff Doe's supervisor, to Plaintiff Doe and another woman ("Witness Doe") while both Does worked for Schuylkill County. (Doc. 11 ¶¶ 32-57). Plaintiff Doe alleges that, on June 6, 2021, in a private meeting between herself, Hatter, and Witness Doe, Hatter made several "unwanted and unwelcome sexually harassing and discriminatory comments to Plaintiff Doe and Witness Doe[.]" (*Id.* ¶ 34). These comments included, *inter alia*, Hatter telling the Does to "[c]onsider me

like a father, giving daddy advice," speculating on if they had been cheerleaders, referring to Witness Doe as "attractive" and comparing her to another former female coworker, speculating that they read glamour magazines rather than books, telling Plaintiff Doe that instead of seeing a therapist she "need[ed] to get over it and start working more [,]" and asking if they used the app "Tik Tok" which he said was "pretty good. It's like soft core porn." (*Id.* ¶¶ 35-38, 40, 44, 48, 51). Plaintiff Doe has alleged that Hatter's comments are, *inter alia*, the fruit of sexist beliefs such as women being less intelligent than men, women being the weaker gender, and a desire to assert dominance and control over females. (*Id.* ¶¶ 41, 45, 47). Plaintiff Doe alleges these types of statements were not made to male colleagues. (*Id.* ¶ 52).

Witness Doe reported the incident to Defendant Zula, the County's Human Resources director, the next day. (Doc. 11 ¶ 58). Zula scheduled a meeting with Plaintiff Doe to discuss the allegations but told her she could not bring an "independent witness" to the meeting. (*Id.* ¶ 67). Plaintiff Doe alleges that other colleagues were not denied the right to have an independent witness present when meeting with Human Resources. (*Id.* ¶ 68). Both Does met with Zula on June 21, 2021. (*Id.* ¶

3

79). Around this time, Zula and Hatter each denied requests by both Does to work from home. (*Id.* ¶¶ 82, 83, 86). Plaintiff Doe alleges that other similarly situated employees were allowed to work from home, and that the denial by Hatter was "because he knew forcing [the Does] to come into work would cause them severe distress and fear for their safety." (*Id.* ¶¶ 85-89).

Also around June 21, 2021, a conversation began between the Does and Hatter over e-mail. (Doc. 11 ¶ 90). Hatter apparently explained the denial of work from home privileges as incompatible with a need to monitor the Does' hours and check them against time spent in the Schuylkill County courthouse. (*Id.* ¶¶ 90-91). Plaintiff Doe alleges that because both Does have the same position, and that position "often required them to work from a location other than [the] courthouse," Hatter's explanation was irrational and is better explained as retaliatory behavior for reporting his comments at the June 6 meeting. (*Id.* ¶¶ 92, 94). Plaintiff Doe says she was fearful after she learned that the defendants "always knew [Plaintiff Doe's] exact whereabouts [,]" and that these events caused both Does to "feel extremely distressed and fearful." (*Id.* ¶¶ 93, 95).

A month later, on July 20, 2021, each Doe independently met with Hatter and Zula. (Doc. 11 ¶ 101). Plaintiff Doe was formally reprimanded, received a written warning, and alleges that Hatter made a disrespectful remark about her recently deceased boyfriend at this meeting. (*Id.* ¶¶ 103-04). Around August 20, 2021, Plaintiff Doe allegedly attempted to arrange with a Ms. Zimmerman to be escorted into the courthouse to pick up some work, a process Plaintiff Doe claims "Defendant Hatter, Ms. Zimmerman, and Plaintiff Doe had all agreed upon." (*Id.* ¶ 114). Ms. Zimmerman failed to respond, and Plaintiff Doe alleges that Hatter eventually admitted he instructed Ms. Zimmerman to ignore Plaintiff Doe so that Plaintiff Doe would "be a problem solver and figure it out on her own." (*Id.* ¶ 116). Disagreements about work from home persisted until December 21, 2021, when the parties came to an agreement on that subject. (*Id.* ¶ 120). In February 2022, Plaintiff Doe was subjected to a *Loudermill*[1] hearing, which resulted in a five-day

---

[1] In *Cleveland Bd. Of Educ. v. Loudermill*, the Supreme Court held that public employees have a property interest in their job, and so could not be deprived of employment without due process, which requires notice and an opportunity to be heard before a deprivation can occur. *Cleveland Bd. Of Educ. v. Loudermill*, 470 U.S. 532, 538-44 (1985). Where a public employee, such as Doe, is being removed for their

5

unpaid suspension for unapproved work absences. (*Id.* ¶¶ 122-27). At that hearing, Plaintiff Doe requested and was denied a laptop to assist her in doing work "from home and on the road." (*Id.* ¶¶ 128-29).

On August 24, 2022, Plaintiff Doe claims she received an email from Schuylkill County HR Director Andrea Whelan, explaining that Plaintiff Doe had been "absent from work without leave or approval since Wednesday, April 27, 2022" and that because of this, the County had determined that Plaintiff Doe had voluntarily resigned her position as of August 23, 2022. (Doc. 11 ¶¶ 130-31). Plaintiff Doe alleges that, in response, she denied that determination and alleged that any "separation from employment has been both forced and calculated by" Defendant Schuylkill County. (*Id.* ¶ 132). Further, she claimed she was told she could not do further work until "balancing" was completed, and she was never notified that balancing had been completed. (*Id.* ¶¶ 133-35).

Plaintiff Doe alleges her resignation was listed as a topic for discussion at the September 6, 2022, Commissioners' meeting agenda, but was not voted on. (*Id.* ¶¶ 138, 140). Around this time, Plaintiff Doe's

---

position, this due process requirement is often fulfilled by having a hearing on the relevant issues, often called a "*Loudermill* hearing."

County email access was cut off, and Hatter informed Plaintiff Doe she would need to file a grievance with her union to pursue relief. (*Id.* ¶ 143). Plaintiff Doe alleges Hatter failed to provide her with the requisite materials to do so, and that when she gathered those materials herself and submitted them to Hatter, he failed to pass them on as required by policy. (*Id.* ¶¶ 144-48).

Plaintiff Doe initiated the instant action on March 4, 2024. (Doc. 1). The defendants moved to dismiss for failure to state a claim, and in response, Plaintiff Doe amended the complaint on June 3, 2024. (Docs. 7, 11). The defendants now move to dismiss the amended complaint for failure to state a claim. (Doc. 12). In addition, the defendants contend that this matter runs afoul of the "claim-splitting doctrine" and should be dismissed, arguing that Plaintiff Doe's claims should have been brought in *Doe, et al. v. Schuylkill County Courthouse, et al.,* Civ. No. 3:21-CV-477 ("*Doe I*"), a related action that is pending before this court and in which Plaintiff Doe is a plaintiff. (Doc. 12). The motion is now fully briefed and ripe for resolution. (Docs. 13, 14, 16).

After consideration, we conclude that the claim-splitting doctrine may be applicable here, and that resolution of the other pending action,

7

which is currently scheduled for a jury trial on March 24, 2025, will help to demonstrate if the underlying facts of the two cases are so similar as to require preclusion of this action. Therefore, we will recommend that the court stay this matter until the resolution of *Doe I*.

III. Discussion

A. Motion to Dismiss – Standard of Review

The defendants have filed a motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Rule 12(b)(6) permits the court to dismiss a complaint if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Under federal pleading standards, a complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

In determining whether a complaint states a claim for relief under this pleading standard, a court must accept the factual allegations in the complaint as true, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and accept "all reasonable inferences that can be drawn from them after construing them in the light most favorable to the non-movant." *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250,

1261 (3d Cir. 1994). However, a court is not required to accept legal conclusions or "a formulaic recitation of the elements of a cause of action." *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").

> As the Third Circuit Court of Appeals has aptly summarized:
>
> [A]fter *Iqbal*, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. *Id.* Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Phillips*, 515 F.3d at 234–35. As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 129 S.Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

Generally, when considering a motion to dismiss, a court relies on the complaint and its attached exhibits, as well as matters of public

9

record. *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007). A court can also consider "undisputedly authentic document[s] that a defendant attached as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Additionally, if the complaint relies on the contents of a document not physically attached to the complaint but whose authenticity is not in dispute, the court may consider such document in its determination. *See Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002). However, the court may not rely on any other part of the record when deciding a motion to dismiss. *Jordan*, 20 F.3d at 1261.

### B. This Action Should be Stayed Pursuant to the Claim-Splitting Doctrine.

Schuylkill County argues that this matter runs afoul of the "claim-splitting doctrine." The defendants argue that Plaintiff Doe should have brought the instant claims in previous action against them in which she is a plaintiff, and that failure to do so was an act of gamesmanship circumventing mandatory rules and procedure. (Doc. 13 at 22).

The claim-splitting doctrine prohibits plaintiffs from maintaining "two separate actions involving the same subject matter at the same time

in the same court against the same defendant." *Walton v. Eaton Corp.*, 563 F.2d 66, 70 (3d Cir. 1977) (citing *United States v. Haytian Republic*, 154 U.S. 118, 134-34 (1894)). The doctrine seeks to fill a gap in the doctrines of *res judicata* and collateral estoppel, which apply only to final judgments. *McKenna v. City of Philadelphia*, 304 F. App'x 89, 94 (3d Cir. 2008) (non-precedential). The doctrine gives similar preclusive effect as those doctrines but is applied where a second action is either used to circumvent applicable rules or is so similar to an existing claim that it is essentially the same cause of action. *Walton*, 563 F.2d. at 71-72. Courts are advised to be wary of a plaintiff seeking to "use the incorrect procedure of filing duplicative complaints for the purpose of circumventing the rules pertaining to the amendment of complaints." *Acosta v. Gaudi*, 2017 WL 4685548 (W.D. Pa. Oct. 18, 2017) (citing *Walton*, 563 F.2d at 71). Where a court finds the claim-splitting doctrine applicable, there are three possibilities: (1) dismissal of the second action, (2) consolidation of the actions, or (3) staying the proceedings until judgment is entered in the first case. *Walton*, 563 F.2d. at 71-72.

After consideration, we conclude that the claims raised in this action arise from operative facts that are similar, but not identical, to the

11

facts alleged in *Doe I*. *Doe I* is scheduled for a jury trial beginning on March 24, 2025. Consolidating the actions is therefore not recommended as it would necessarily delay that trial. We believe resolution of *Doe I* may help to clarify if the operative facts here are so similar to that action that the plaintiff was required to bring her allegations against these defendants in that action. We will therefore recommend staying this matter, pursuant to the holding in *Walton*, and denying the motion to dismiss without prejudice to renewal once the stay is lifted.

## IV. <u>Recommendation</u>

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the defendants' motion to dismiss (Doc. 12) be DENIED without prejudice, and that this action be STAYED pending the resolution of *Doe I*.

The parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties,

written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 3rd day of February, 2025.

*s/ Daryl F. Bloom*
Daryl F. Bloom
Chief United States Magistrate Judge